1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

| | |
|---|---|
| ROBERT RIVAS,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of Social Security,<br><br>          Defendant. | Case No.  1:22-cv-00815-BAM<br><br>**ORDER REGARDING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 18, 22) |

18

## **INTRODUCTION**

19

20

21

22

23

Plaintiff Robert Rivas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

24

25

26

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole

27

28

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 10, 20, 21.)

and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's motion for summary judgment, deny Plaintiff's appeal, and affirm the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff protectively filed an application for disability insurance benefits on June 5, 2019.  AR 213-14, 215-20.[2]  Plaintiff alleged that he became disabled on August 27, 2018, due to heart disease, stroke, neurological issues, Type 2 diabetes, high blood pressure, and high cholesterol.  AR 217, 257.  Plaintiff's application was denied initially and on reconsideration.  AR 105-09, 116-20.  Subsequently, Plaintiff requested a hearing before an ALJ.  Following a hearing, ALJ Joseph R. Doyle issued a partially favorable decision on August 11, 2021.  AR 12-41, 48-72.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Hearing Testimony and Medical Record**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was disabled from August 27, 2018, through June 20, 2020, and his disability ended June 21, 2020.  AR 17-41.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 27, 2018, the date he became disabled.  AR 21.  For the period from August 27, 2018, through June 20, 2020, ALJ identified the following severe impairments:  cerebrovascular accident (s/p 2019 craniotomy bypass with underlying Moyamoya disease); diabetes mellitus (with vertigo and syncope); cardiomyopathy with coronary artery disease; congestive heart failure; hypertension; mood disorder; anxiety disorder; post-traumatic stress disorder; and methamphetamine use disorder. AR 21-22.  The ALJ determined that for the period from August

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

27, 2018, through June 20, 2020, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 22-23.

Based on a review of the entire record, the ALJ found that for the period from August 27, 2018, through June 20, 2020, Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he could never climb ladders, ropes, or scaffolds, could only occasionally climb stairs and ramps, could frequently handle and finger objects with the left upper extremity, could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights.  Plaintiff was limited to the performance of simple, routine, and repetitive tasks, in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting, and would consistently miss at least two workdays per month.  AR23-27.  With this RFC, the ALJ found that for the period from August 27, 2018, through June 20, 2020, Plaintiff was unable to perform any past relevant work, and there were no jobs in the national economy that Plaintiff could have performed.  AR 27-29.  The ALJ therefore concluded that Plaintiff was under a disability from August 27, 2018, through June 20, 2020.  The ALJ also concluded that Plaintiff's substance use disorder was not a contributing factor material to the determination of disability.  AR 29.

The ALJ further identified that Plaintiff developed a new severe impairment since June 21, 2020, the date his disability ended:  borderline intellectual functioning.  AR 29-30.  The ALJ determined that beginning June 21, 2020, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 30-33.  The ALJ also determined that medical improvement occurred as of June 21, 2020, which increased Plaintiff's RFC.  AR 33.  The ALJ found that, beginning June 21, 2020, Plaintiff had the RFC to perform light work, except that he could never climb ladders, ropes, or scaffolds, could only occasionally climb stairs or ramps, could frequently handle and finger objects with the left upper extremity, could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights.  He was limited to the performance of simple, routine, and repetitive tasks and to work in a low-stress environment, defined as requiring only occasional decision-making and only occasional changes in work setting.  AR 33-40.  With this RFC,

the ALJ found that Plaintiff was unable to perform his past relevant work, but beginning June 21, 2020, there were jobs existing in the national economy that Plaintiff could perform, such as package sorter, routing clerk, and office helper.  AR 40-41.  The ALJ therefore concluded that Plaintiff's disability ended June 21, 2020, and the claimant had not become disabled again since that date.  AR 41.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff argues that the ALJ improperly rejected the opinion of the consultative examiner, Dr. Steven Stoltz.  (Doc. 18 at pp. 8-11.)

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 404.1520c.  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); *Woods*, 32 F.4th at 792.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

reasons" to discount the medical opinions. *See Woods*, 32 F.4th at 792 (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

Relevant here, Dr. Stoltz completed a consultative internal medicine evaluation on August 10, 2020. On examination, Plaintiff did not use a cane, walker, braces, or any other assistive device. He had grip strength of 40 pounds on the right and 20 pounds on the left. His neck range of motion was within normal limits. He had reduced flexion in his back, but range of motion was otherwise within normal limits. He had no tenderness to palpation in the midline or paraspinal areas and straight leg raising was negative at 90 degrees. Range of motion in his shoulders, elbows, wrists, hips, knees, and ankles also were within normal limits. His cranial nerves were grossly intact though Plaintiff had decreased grip strength on the left compared to the right. Motor strength was 5/5 in all extremities with good tone bilaterally with good active range of motion. Sensation was grossly intact throughout, and reflexes were normal and symmetric bilaterally. Plaintiff's gait was within normal limits. AR 1686-91.

Following the examination, Dr. Stoltz opined that Plaintiff had no restrictions on standing and walking or sitting and an assistive device was not needed. Due to "some subtle weakness more so on the left than on the right," Dr. Stoltz opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently. AR 1690. As to manipulative activities, Dr. Stolz indicated that Plaintiff "also has some subtle weakness of the left hand compared to the right" and could only occasionally grasp, grip, push, and pull with the left hand. AR 1691. Plaintiff also was limited from climbing ladders or operating heavy machinery that required the use of his left hand frequently.

///

///

In evaluating Dr. Stoltz's opinion, the ALJ reasoned as follows:

The opinion of Dr. Stoltz is unpersuasive, as although accompanied by a narrative exam report as attempted support, the evidence is consistent with a different light residual functional capacity with less restrictive manipulative and hazards limits.  Dr. Stoltz found the claimant capable of light work with occasional left manipulative abilities and a prohibition from hazards (Ex. 16F/5-6).  Yet, since June 21, 2020, despite intermittent complaints of milt [sic] left arm weakness, motor strength and grip observations have [ ] largely been normal (Ex. 18F/9-10 and 25F/160).  Even Dr. Stoltz observed intact motor strength and sensation with 20 lbs. grip on the left and 40 lb. grip in the dominant right hand (Ex. 16F/3-5).  Moreover, the claimant had admitted being able to perform all activities of daily living (Ex. 17F).  Overall, the evidence is inconsistent with restriction to only occasional manipulative abilities with the left upper extremity.  Additionally, while the claimant has uncontrolled diabetes with underlying cardiac disease, hypertension and a history of stroke, he has not required inpatient hospitalization since well before June 21, 2020.  Nor has he sought treatment for lightheadedness since June 21, 2020.  Further, his doctor was pleased with his recovery from his craniotomy bypass, encouraging yearly testing.  Overall, the evidence is most consistent with a different light residual functional capacity as described at Finding 17.  Thus, Dr. Stoltz' opinion is unpersuasive.

AR 38.

Plaintiff maintains that in finding Dr. Stolz's opinion unpersuasive, the ALJ erred in his determination that since June 21, 2020, Plaintiff's motor strength and grip observations had been largely normal.  (Doc. 18 at p. 9.)  According to Plaintiff, the ALJ cited one record in which no physical exam was conducted—Ex. 18F/9-10 [AR 1710-11]—and one in which Plaintiff's grip was "equal and strong"—Ex. 25/160 [AR 2273].  (*Id*. at pp. 9-10.)  Plaintiff therefore contends that the ALJ's determination is not supported by substantial evidence and that the cited evidence is not inconsistent with the record.

Substantial evidence is not a high bar. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' ") (citation omitted).  While Plaintiff correctly notes that the ALJ cited evidence of a telemedicine visit, that same evidence nonetheless showed Plaintiff to have full motor strength in the bilateral upper and lower extremities with intact sensation and no upper extremity ataxia noted with rapid alternating movements.  AR 1710-1711.  Further, the other evidence cited by the ALJ showed an "[e]qual and strong" hand grasp, along with objective findings of normal muscle strength and movement and limb

7

strength in all four extremities.  AR 2273.  As these records identify largely normal motor strength and grip observations, the ALJ reasonably determined they were inconsistent with occasional manipulative abilities with the left upper extremity.

Additionally, the ALJ noted that Dr. Stoltz himself found intact motor strength with a grip strength of 20 pounds in the left hand and 40 pounds in the right hand with the use of Jamar Hand Dynamometer.  AR 38, 1688.  Indeed, Dr. Stolz identified only "subtle weakness" in Plaintiff's left arm and hand.  AR 1690-91.  Moreover, the ALJ cited Plaintiff's own admission that he could perform all activities of daily living.  AR 38, citing AR 1694-99 ("Robert is independently able to complete all activities of daily living.").

The Court finds that the ALJ's determination is supported by substantial evidence.  Plaintiff does not identify clinical findings directly relevant to his handling and fingering capabilities to demonstrate error or to indicate that the ALJ's decision was unreasonable.  Instead, Plaintiff references the objective grip strength findings as measured by Dr. Stoltz utilizing the Jamar Hand Dynamometer to argue that those findings "reasonably result in significantly reduced capacity to perform grasping and handling on the left, but also represents the only evidence of same, subsequent to June 21, 2020." (Doc. 18 at p. 10.)  At best, Plaintiff has presented evidence suggesting that there may be more than one rational interpretation of Dr. Stoltz's findings, in which case the ALJ's interpretation must stand. *See*, *e.g.*, *Gracy B. v. Kijakazi*, No. 8:20-cv-01241-SP, 2022 WL 971336, at *9 (C.D. Cal. Mar. 30, 2022) (concluding ALJ's interpretation of dynamometer findings must stand where plaintiff argued alternative interpretation of dynamometer finding as evidence of gross manipulative impairment).  If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff also argues that because the ALJ found none of the medical opinions persuasive and cited no evidence to refute the objective Jamar test results, the ALJ improperly interpreted grip strength testing on his own.  Plaintiff's argument is not persuasive for two primary reasons.  First, under the new regulations, the ALJ was not required to defer or give specific evidentiary weight to any medical opinion or prior administrative medical findings.  20 C.F.R. § 404.1520c(a).  Second, the ALJ

developed the manipulative limitations in the RFC based on more than just the Jamar test results. The ALJ based his determination on evidence that since June 21, 2020, Plaintiff generally presented with intact motor strength, normal handgrip, and intact sensation.  AR 39, citing 1688-90, 1710-11, 2273.

Based on the above, the Court concludes that the ALJ properly evaluated Dr. Stoltz's opinion.

### **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's motion for summary judgment and his appeal from the administrative decision of the Commissioner of Social Security, and affirms the agency's determination to deny benefits.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Robert Rivas.

IT IS SO ORDERED.

Dated:   __**May 10, 2023**__                             _____/s/ *Barbara A. McAuliffe*_____
                                                                     UNITED STATES MAGISTRATE JUDGE